JOSEPH H. IMESON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22219. Promulgated June 14, 1950.

---

1152

*Robert J. Hawkins, Esq.*, for the petitioner.
*Edward M. Woolf, Esq.*, for the respondent.

OPINION.

TURNER, *Judge*: As to the deficiency determined, we do not find that petitioner has shown any error on the part of the respondent. In that respect only two errors were alleged, one that disallowance of the deduction of $67.50 as traveling expenses for 11¼ days of domestic travel and the other the disallowance of $1,024 as expenses paid and incurred by petitioner in foreign travel. As to the domestic travel, there is nothing in the record which would in any way substantiate any claim that petitioner expended more than the $6 per day allowed and paid to him by his employer. For foreign travel the petitioner was reimbursed by TWA to the extent of $8 per day for 109¾ days and in determining the deficiency the respondent has allowed a deduction of $729 as amounts expended by petitioner from his own funds. While we do believe that the petitioner's expenses while on foreign travel

most likely exceeded the $8 per day allowed to him by his employer, the evidence of record is not sufficient to supply any basis for concluding that the amounts expended in excess of the $8 per day allowed to him by TWA were greater than the $729 which the respondent has allowed in determining the deficiency. As to the other deductions claimed by petitioner which were disallowed, the petition contains no allegation of error, possibly because of a recognition on the part of his counsel that such claim would be futile in view of the fact that in making the return the standard deduction provided for by the statute in lieu of itemized deductions had been claimed.

With respect to the determination of fraud, the conclusions of the respondent and his contentions made at the hearing and on brief center largely around the deductions claimed for expenses while on domestic and foreign travel. In making his return petitioner had claimed $2,805 for expenses while on foreign travel as representing 121 days at $15 per day. He claimed $2,007.60 for expenses while on domestic travel as covering 168 days at $11.95 per day. He also claimed a total of $797.10 to cover his estimate of cost of travel by train, plane, and automobile. The amounts so claimed were reduced by $971 as being the amount for which he was reimbursed by his employer. On its face the amount claimed for foreign travel was excessive in the amount of $990. The claim was stated as being for 121 days at $15 per day and the total was shown as $2,805 instead of $1,815, the correct mathematical result. The respondent, however, makes no point about the matter, and there is nothing in the record which would indicate that the agent or anyone else noticed the mathematical discrepancy. It is also apparent that the respondent was of the view that the petitioner did have expenses in foreign travel in excess of the amount for which he was reimbursed by his employer. Taking the amount of reimbursement and the amount allowed by the respondent in his determination with respect to foreign travel, it is to be noted that the total is fairly close to the amount that would have been shown from an accurate mathematical computation for 109¾ days of foreign travel at $15 per day, 109¾ days being the foreign travel allowed by respondent in his computation. The main item accordingly upon which the respondent rests his determination of fraud is the claim with respect to domestic travel and possibly the claim of deductions for other expenses made by petitioner in connection with his employment.

Petitioner concedes that in his return he claimed deductions to which he was not entitled. It is his contention, however, that in making the return his claim of those deductions was not due to fraud with intent to evade tax, but rather that he was of the view that Nimro

was experienced and competent in tax work and that he signed and filed the return which Nimro had prepared after being assured that all of the expenses listed as having been made by him while away from Chicago were allowable deductions. He admits that the amounts were in practically every instance estimates, but believes that they are substantially correct.

But for the inclusion of the items totaling $797.10 covering the cost of pleasure and other unexplained personal trips by train, plane, and automobile, we should have no difficulty in arriving at the conclusion that the respondent has failed to prove his case. The petitioner was an air pilot, regularly employed by TWA. In that employment his post of duty was Chicago, and had been Chicago for approximately two years. On the 1st of February he was assigned to duty which by its nature indicated that so long as it lasted his operations would be from Washington. It was evident, however, that with or shortly after the conclusion of the war such duty would come to an end, and if petitioner continued in his employment with TWA he would either be returned to his old post in Chicago or receive some other assignment suitable to TWA. A claim to the effect that while on such war duty with his post in Washington petitioner was away from home on business within the meaning of section 23 (a) (1) of the Internal Revenue Code is neither novel nor startling. As a matter of fact, such a view as to the meaning of the statute was quite prevalent and the conclusion that such view was not within the meaning of the statute was not received in the decided cases without widespread differences of opinion and without recognition that very respectable arguments could be made in support of the opposite conclusion. In that state of affairs we are unable to find any force in the respondent's view that the mere claiming of deductions covering petitioner's living expenses and traveling expenses in the course of his employment while away from Chicago is necessarily an indication of fraud. The same view also applies to that portion of petitioner's deductions for transportation cost which represents the cost of operating his automobile from his place of abode to the airport or other places he was required to visit in the course of his employment. See and compare *Charles C. Rice*, 14 T. C. 503.

We do have difficulty, however, with certain portions of the deductions claimed by petitioner covering transportation cost. With respect to a substantial part of those expenditures the petitioner testified that they represented cost of trips made for pleasure and for personal reasons. Except to the extent that the recreation indulged in might tend to maintain for him a state of physical and mental well-being and thereby enable him to perform his duties as an airplane pilot, those expenditures could have no relation whatever to peti-

tioner's business or profession, and in his testimony he admitted that at the time of making his return he had some question about his right to claim those amounts as deductions. His only excuse is that Nimro convinced him that he was entitled to deduct all of his expenses while away from Chicago, even though personal and for pleasure. We are able to understand how it might be conceivable for one to have such ideas about the cost of his meals and lodging, since those were items which would necessarily continue whether he remained in Washington at his post of duty, which he considered as being away from home because he was away from Chicago, or whether he happened to be in New York for pleasure and recreation. It is extremely difficult, however, to comprehend how a man of petitioner's apparent intelligence, ability, and experience could possibly believe, even with the assurance of Nimro, that the cost of pleasure trips to New York and pleasure and personal trips to Pittsburgh or St. Louis could be regarded as expenses sufficiently related to the conduct of his business as a pilot for TWA to believe that they were traveling expenses while away from home in the pursuit of his trade or business so as to entitle him to a deduction therefor in the computation of his income tax.

All of this brings us to two alternatives—either he knew he was not entitled to the deductions and, knowing they were not proper deductions, he excused himself in the claiming of them because of the advice of Nimro and proceeded to sign a false return with fraudulent intent of evading a portion of his just income tax, or he was a very gullible man and not of such experience and capacity for thinking correctly as might have been expected of one in his position. It is an unpleasant and difficult task to conclude that either is the case. We have listened attentively to the testimony of the petitioner and we have examined and reexamined the evidence of record, and it is our conclusion that the petitioner did not believe or think that in computing the amount of his tax he was entitled to deduct from gross income amounts expended by him for travel for personal pleasure. He knew that such items were not expenditures in the course of his employment, and, rather than being convinced that they were allowable deductions, it is our conclusion that he persuaded himself or allowed himself to be convinced that they would not be checked, but would be overlooked, to the end that he would not have to pay the full amount of his tax. The deficiency was due in part to fraud, with intent to evade tax.

Reviewed by the Court.

*Decision will be entered under Rule 50.*